UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANN JONES and JANE TENZER, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No.  4:23-cv-00023-SRC |
| v. | ) ) | |
| PAPA JOHN'S INTERNATIONAL, INC., | ) ) ) | |
| Defendant. | | |

**<u>Memorandum and Order</u>**

This is one of many lawsuits challenging the use of "session replay code" that companies such as Papa John's say helps improve the experience on their websites by monitoring user activity.  Plaintiffs Ann Jones and Jane Tenzer allege that Papa John's' use of session replay software constitutes an illegal wiretap, among other things.  Hoping to defend its monitoring practices, Papa John's moves to dismiss, arguing that the Court lacks personal jurisdiction and that the Complaint fails to state a claim.  Because the Court concludes that it lacks general or specific jurisdiction over Papa John's, the Court dismisses Plaintiffs' claims for lack of personal jurisdiction.

**I.      Background**

The Court accepts the following facts as true for the purposes of the motion to dismiss. Papa John's International, Inc. operates www.papajohns.com and the Papa John's mobile app. Doc. 1 at ¶¶ 45, 50.  Papa John's uses session replay code on its website and app to record mouse movements, clicks, keystrokes, URLs of webpages visited, and other electronic communications in real time.  *Id.* at ¶¶ 2–3.

Plaintiffs are Missouri residents.  *Id.* at ¶¶ 10–11.  Jones visited the Papa John's website while in Missouri.  *Id.* at ¶ 50.  Plaintiffs do not specify where Tenzer was located when she visited the Papa John's website or downloaded its mobile app.  *See id.* at ¶¶ 51, 53.  Papa John's used session replay code to monitor Plaintiffs' digital activities while they visited the Papa John's website and used the Papa John's mobile app.  *Id.* at ¶¶ 50–53.

Plaintiffs filed this putative class action alleging Papa John's violated the Missouri Wiretap Act, the Missouri Merchandising Practices Act, the Electronic Communications Privacy Act, and the Stored Communications Act.  *Id.* at ¶¶ 119–62; 184–261.  Plaintiffs also bring common-law intrusion-upon-seclusion and trespass-to-chattels claims.  *Id.* at ¶¶ 163–83.

## II.     Standard

Federal Rule of Civil Procedure 12(b)(2) allows a party to move to dismiss a lawsuit for lack of personal jurisdiction.  When a defendant contests personal jurisdiction, a plaintiff bears the burden at the pleading stage to "make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state."  *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (internal quotations and alterations omitted); *see also Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022).

"Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion."  *K-V Pharm. Co.*, 648 F.3d at 592 (internal quotations, alterations, and citations omitted).  At this stage, the Court views all the evidence in the light most favorable to the plaintiff and will not dismiss the case if the evidence, when viewed in this light, "is sufficient to support a conclusion that the exercise of personal jurisdiction over [the defendant] is proper."  *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (first citing

*Radaszewski ex rel. Radaszewski v. Telecom Corp.*, 981 F.2d 305, 309–10 (8th Cir. 1992); and

then citing Fed. R. Civ. P. 56(a)).

## III.    Discussion

Where, as is the case here, the applicable federal statutes do not authorize nationwide

personal jurisdiction, "the existence of personal jurisdiction depends on the long-arm statute of

the forum state and the federal Due Process Clause." *Bros. & Sisters in Christ*, 42 F.4th at 951

(first citing *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021); and then citing Fed. R. Civ. P.

4(k)(1)(A)).  "Missouri's long-arm statute authorizes personal jurisdiction over defendants who,

inter alia, transact business, make a contract, or commit a tort within the state." *Viasystems, Inc.*

*v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011) (citing Mo.

Rev. Stat. § 506.500.1).  "These individual categories are construed broadly, such that if a

defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted

'to provide for jurisdiction, within the specific categories enumerated in the statute[], to the full

extent permitted by the [D]ue [P]rocess [C]lause.'" *Id.* (alterations in original) (quoting *State ex*

*rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984)).

However, "[e]ven if personal jurisdiction over a defendant is authorized by the forum

state's long-arm statute, jurisdiction can be asserted only if it comports with the strictures of the

Due Process Clause." *Id.* at 594 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

286, 291 (1980)).  Thus, if the Court concludes that the cited actions fail to "surmount the due-

process threshold," the Court need not decide whether the activities fall within the bounds of

Missouri's long-arm statute.  *See id*.

The Court thus "turn[s] to whether exercising jurisdiction over [Papa John's] comports

with the Due Process Clause." *Bros. & Sisters in Christ*, 42 F.4th at 951.  "Under this standard,

'[p]ersonal jurisdiction exists only if the contacts between the defendant and the forum state are

3

sufficient to establish that the defendant has purposefully availed himself of the benefits and protections of the forum state." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (alteration in original) (quoting *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006)); *see also Kaliannan*, 2 F.4th at 733 ("[C]ritical to due process analysis is that the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." (alterations in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985))).

The Eighth Circuit has identified five factors for courts to consider in assessing whether there are minimum contacts sufficient to confer jurisdiction:  "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *K-V Pharm. Co.*, 648 F.3d at 592 (alteration in original) (quoting *Johnson*, 614 F.3d at 794); *see also Bros. & Sisters in Christ*, 42 F.4th at 952.  The first three factors are "primary factors," though the Eighth Circuit considers "all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists." *K-V. Pharm. Co.*, 648 F.3d at 592.

The Eighth Circuit considers an "additional factor" in the intentional-tort context:  the "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984).  *See, e.g.*, *Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*, 74 F.4th 928, 931 (8th Cir. 2023).  Under that test,

> a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state].

*Id.* (alteration in original) (quoting *Bros. & Sisters in Christ*, 42 F.4th at 954).

4

"The relevant conduct and connections for the due process analysis depend on whether personal jurisdiction is alleged to be general or specific." *Bros. & Sisters in Christ*, 42 F.4th at 951–52 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)). "General jurisdiction exists where a defendant is essentially at home in the forum state, whereas specific jurisdiction covers defendants less intimately connected with a State, but only as to a narrower class of claims, namely those that arise out of or relate to the defendant's contacts with the forum." *Id.* (cleaned up) (quoting *Ford Motor Co.*, 141 S. Ct. at 1024–25).

As the Supreme Court recently reiterated, these categories apply in the absence of consent to suit in the forum state, and consent remains viable as a way to establish personal jurisdiction. *See Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2040 (2023). As Plaintiffs do not contend that Papa John's consented to suit in Missouri—by statute or otherwise—the Court does not address the issue of consent further.

Plaintiffs maintain that Papa John's is subject to both specific and general personal jurisdiction in Missouri. The Court addresses each in turn.

### A.    General jurisdiction

The Supreme Court has held that a corporation is primarily "at home" for purposes of general jurisdiction in two "paradigm all-purpose forums": the corporation's place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). General jurisdiction is only available elsewhere in the "exceptional case" where a corporation's affiliations with a forum are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 & n.9.

Plaintiffs allege that Papa John's is incorporated in Delaware and headquartered in Kentucky, not Missouri. Doc. 1 at ¶ 12. And Plaintiffs do not argue that this is an exceptional case in which the affiliations of Papa John's with the forum state render it at home in Missouri.

*See Daimler*, 571 U.S. at 137–39 & n.9.  Instead, citing exclusively pre-*Daimler* cases, Plaintiffs argue that the Court has general jurisdiction due to Papa John's' "substantial" and "continuous" contacts with the forum, asking the Court to take judicial notice of the existence of "at least 51 brick-and-mortar stores" in Missouri.  *See* doc. 26 at 11–12 (first citing *State ex rel. K-Mart Corp. v. Holliger*, 986 S.W.2d 165, 168 (Mo. 1999); and then citing *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 708 (8th Cir. 2003) (applying "substantial" and "continuous" contacts test from *Holliger*)).  The standard set forth in those cases, however, no longer applies.  *See Daimler*, 571 U.S. at 138 (rejecting as "unacceptably grasping" the formulation that general jurisdiction exists "in every State in which a corporation engages in a substantial, continuous, and systematic course of business"  (internal citation and quotation marks omitted)); *see also, e.g.*, *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (noting that "*Daimler* makes clear the demanding nature of the standard for general personal jurisdiction over a corporation); *State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 46 (Mo. 2017) (rejecting *Holliger* test in light of *Daimler*).

The contacts Plaintiffs cite, without more, fail to render Papa John's "at home" in Missouri.  *See Daimler*, 571 U.S. at 139; *see also, e.g.*, *White v. Steak N Shake Inc.*, No. 4:20-cv-00323-CDP, 2020 WL 1703938, at *2 (E.D. Mo. Apr. 8, 2020) (rejecting the argument that the "continuous and systematic operation in Missouri of thirty-nine of its more than 400 national restaurants, with nothing more, make[s] Steak N Shake essentially at home [in Missouri]" (citations omitted)).  Because Plaintiffs fail to establish that Papa John's is "at home" in Missouri, the Court concludes that it does not have general jurisdiction over Papa John's.

And while Plaintiffs request jurisdictional discovery "if this Court requires more information either about the number and [sic] nature of Defendant's activities within the state," doc. 26 at 12, Plaintiffs fail to offer more than "speculation or conclusory assertions" regarding

6

what further discovery would show.  *See Viasystems*, 646 F.3d at 598.  Accordingly, the Court

denies Plaintiffs' request for jurisdictional discovery.  The Court turns next to the question of

whether it has specific jurisdiction over Papa John's.

###    B.      Specific jurisdiction

Plaintiffs allege that Papa John's' contacts with Missouri are as follows:  it maintains a

nationally available website that implements session replay code to record website visitors'

"mouse movements, clicks, keystrokes, . . . URLs of web pages visited, and/or other electronic

communications in real-time."  Doc. 1 at ¶¶ 1–6, 45–46, 107.  It similarly maintains an app that

uses session replay code to record app users' "screen touch movements, clicks, keystrokes . . . ,

tracking of the app pages visited, and/or other electronic communications in real-time."  *Id.*  Both

the website and app allow users to search for nearby stores, and "[c]ustomers regularly us[e]

[the] website to inquire about products and make purchases."  *Id.* at ¶¶ 16, 45.  Plaintiffs also

refer to Papa John's "marketing and selling" goods in Missouri.  *Id.* at ¶ 15.

However, in assessing specific jurisdiction, the Court must only look to those contacts of

Papa John's with Missouri that relate to Plaintiffs' claims.  *See Bros. & Sisters in Christ*, 42

F.4th at 952–53.  In other words, specific jurisdiction requires "an affiliation between the forum

and the underlying controversy, and where that connection is absent, specific jurisdiction is

lacking regardless of the extent of a defendant's unconnected activities in the State."  *Id.*

(internal quotation marks omitted) (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F.

Cnty.*, 582 U.S. 255, 264 (2017)).  Here, Plaintiffs' claims relate only to Papa John's' use of

session replay code, not its marketing or sales activity in Missouri.  *See* Docs. 1, 26.  Seizing

upon that point, Papa John's argues that any contacts relating to marketing or sales activity are

irrelevant to the specific-jurisdiction analysis in this case.  Doc. 21-1 at 14.  Nowhere in their

briefing do Plaintiffs challenge the notion that their claims arise solely out of, and relate solely

to, Papa John's' use of session replay code.  *See* doc. 26.  Accordingly, the Court focuses its

specific-jurisdiction minimum-contacts analysis only on the use of session replay code on the

Papa John's website and app.

Applying the relevant factors, *see Bros. & Sisters in Christ*, 42 F.4th at 952, 954, the

Court does not find sufficient contacts between Papa John's and Missouri to support specific

jurisdiction.  Specific jurisdiction is only proper where the defendant "has purposefully directed

[its] activities at [Missouri] residents," and the suit "arises out of" or "relates to" those activities.

*Lakin*, 348 F.3d at 707 (quoting *Burger King*, 471 U.S. at 472).

Papa John's contends that the only relevant contacts here are not "purposefully directed"

at Missouri.  Doc. 21-1 at 12.  It points out that the Papa John's website and app are accessible

nationwide and are "accessible to all but targeted at no one in particular."  *Id.* (citing *Allied Ins.*

*Co. of Am. v. JPaulJones L.P.*, 491 F. Supp. 3d 472, 477–78 (E.D. Mo. 2020) (finding no

jurisdiction over website operator where no evidence existed that the operator "specifically

targeted Missouri over any other state")).  Papa John's also argues that because the Papa John's

website and app are available nationwide, the alleged harm "would have occurred no matter the

state Plaintiff[s] [were] in," and that this is "precisely the sort of 'unilateral activity of a plaintiff'

that the Supreme Court has held 'cannot satisfy the requirement of contact with the forum

state.'"  Doc. 21-1 at 12–13 (first quoting *Sacco v. Mouseflow, Inc.*, No. 2:20-cv-233-TLN-KJN,

2022 WL 4663361, at *5 (E.D. Cal. Sept. 30, 2022); and then quoting *Walden v. Fiore*, 571 U.S.

277, 286, 290–91 (2014)).

Further, Papa John's contends that because Plaintiffs allege intentional torts, *Calder*'s

"effects test" applies.  Doc. 21-1 at 13 n.4; *see Kendall Hunt Publ'g Co.*, 74 F.4th at 931 (stating

that the Eighth Circuit "consider[s] an additional factor in the context of intentional torts:  the

'effects test' set forth in *Calder v. Jones*"); *see also, e.g., Hasson v. FullStory, Inc.*, No. 2:22-cv-

1246, 2023 WL 4745961, at *2 (W.D. Pa. July 25, 2023) (applying the *Calder* test to

wiretapping and intrusion-upon-seclusion claims involving session replay code); *Saleh v. Nike,*

*Inc.*, 562 F. Supp. 3d 503, 511 (C.D. Cal. 2021) (applying the *Calder* test to statutory and

common-law invasion-of-privacy claims involving session replay code).  Plaintiffs do not

dispute that their claims sound in tort.  *See, e.g.*, doc. 26 at 10 (arguing that Papa John's

"committed a tortious act within Missouri"); *id.* at 13 (arguing that "Plaintiffs have, at a

minimum, alleged the tort of trespass to chattels"); *id.* at 20–21 (arguing that "Plaintiffs have

stated a claim for intrusion upon seclusion"); *id.* at 21–24 (arguing that "Plaintiffs have stated

claims for trespass to chattels").

To satisfy the *Calder* test, Plaintiffs must demonstrate, among other things, that Papa

John's acted in a manner "uniquely or expressly aimed at [Missouri]." *Kendall Hunt Publ'g Co.*,

74 F.4th at 931 (quoting *Bros. & Sisters in Christ*, 42 F.4th at 954).  Papa John's contends that

Plaintiffs fail to do so.  Doc. 21-1 at 13 n.4 (citing *Bros. & Sisters in Christ*, 42 F.4th at 954).  In

response, Plaintiffs only argue that by "reach[ing] into devices in the state to extract intrusive

recordings, [Papa John's] has targeted its activities toward that state, even if it has also targeted

such activities towards other states." Doc. 26 at 11.  Plaintiffs' argument lacks merit.  *See Bros.*

*& Sisters in Christ*, 42 F.4th at 954; *Johnson*, 614 F.3d at 798.

In addressing specific jurisdiction, Plaintiffs focus on the "interactivity" of the Papa

John's website and argue that "internet contacts can give rise to specific jurisdiction" under the

*Zippo* test.  *See* doc. 26 at 10–11, citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp.

1119 (W.D. Pa. 1997).  As the Honorable Stephen N. Limbaugh, Jr., Senior United States

District Judge, recently explained, "*Zippo* is a frequently-cited case that attempts to create a

sliding scale of sorts to answer the question of whether a website is sufficiently robust, and

focused, so as to be considered a targeted 'commercial activity' towards a forum such that a

9

company should be subject to specific jurisdiction there." *Allied Ins. Co. of Am.*, 491 F. Supp. 3d

at 475.  *Zippo* explains that "sliding scale":

> At one end of the spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.  The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.  In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* (quoting *Zippo Mfg. Co.*, 952 F. Supp. at 1119).  "The Eighth Circuit finds *Zippo*

'instructive,' and boils the scale down to 'active contract formation' on the one end to the 'mere

posting of information on a website' on the other." *Id.* (quoting  *Johnson v. Arden*, 614 F.3d

785, 796 (8th Cir. 2010)).

Plaintiffs argue that the "[s]ession [r]eplay [c]ode at the center of this case" means that

Papa John's website is "on the high end of this spectrum of activity" because it involves the

"transmission of computer files." Doc. 26 at 11.  In evaluating a similar argument, Judge

Limbaugh, Jr. noted that:

> Years after *Zippo*, the U.S. Supreme Court issued an admonishment that the "minimum contacts analysis looks to the ***defendant's contacts with the forum state*** [and] not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. at 285 (emphasis added).  Thus, it is not plaintiff's contacts with the forum state, in and of itself, that matters.  *Id.*  Furthermore, "[e]ven regularly occurring sales of a product in a state do not justify the exercise of [specific] jurisdiction over a claim unrelated to those sales." *Bristol-Myers Squibb*, 582 U.S. at 264 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 930 n.6 (2011)).  Reflecting these realities, one appellate court has highlighted the narrowing of *Zippo* over time, remarking that many post-*Zippo* decisions "have made explicit the requirement that the ***defendant intentionally interact with the forum state via [its] website*** in order to show purposeful availment." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (emphasis added); *see also Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 750 (D. Minn. 2008).

10

And, recently, the Fourth Circuit took this to mean that a website engaging in commercial transactions "to anyone who seeks it out, regardless of where they live" does not constitute a website targeting a specific state. *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 141 (4th Cir. 2020) (Marriott's operation of a booking website "available to anyone who seeks it out" did not target a specific state over any other state). The Eighth Circuit, albeit under the nuances of the so-called "*Calder* Effects test" reserved for intentional torts, has spoken in similar terms. *See Johnson*, 614 F.3d at 796 (noting that an at-issue website did not appear to "specifically target" Missouri because any reference to Missouri was "incidental and not performed for the very purpose of having their consequences felt in Missouri").

*Allied Ins. Co.*, 491 F. Supp. 3d at 475–76 (alterations and emphasis in original).

The Court agrees with Judge Limbaugh, Jr.'s analysis of *Zippo* in light of cases like *Walden* and *Bristol-Myers Squibb*. *See id.* As Judge Limbaugh, Jr. noted, the Supreme Court has held that while "a defendant's contacts with the forum State may be intertwined with [its] transactions or interactions with the plaintiff . . . a defendant's relationship with a plaintiff[,] standing alone, is an insufficient basis for jurisdiction." *Id.* (alterations in original) (quoting *Walden*, 571 U.S. at 286). As Judge Limbaugh, Jr. concluded, "'there is no limiting principle' to [Plaintiffs'] argument"—Plaintiffs "'could sue everywhere' so long as 'having an interactive website were enough in situations like this one.'" *Id.* (quoting *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014)). The Court finds Judge Limbaugh, Jr.'s analysis persuasive and applicable to Plaintiffs' specific-jurisdiction argument here.

Plaintiffs fail to provide any allegations or evidence to show that the Papa John's website and app are especially tailored to Missouri consumers or that Papa John's made special efforts to market its website and app in Missouri. Plaintiffs' threadbare allegation that Papa John's has "targeted" Missouri does not alter this fact. Nothing in the record suggests Papa John's "directed" its website and app at Missouri any more than any other state.

11

The Court also notes that numerous district courts across the country have found a lack of specific jurisdiction over session-replay-code claims.  *See, e.g.*, *Rosenthal v. Bloomingdale's, Inc.*, No. CV 22-11944-NMG, 2023 WL 5179506 (D. Mass. Aug. 11, 2023); *Hasson*, 2023 WL 4745961; *Alves v. Goodyear Tire & Rubber Co.*, No. CV 22-11820-WGY, 2023 WL 4706585 (D. Mass. July 24, 2023); *Licea v. Caraway Home Inc.*, No. EDCV 22-1791-JGB, 2023 WL 1999496 (C.D. Cal. Feb. 9, 2023); *Sacco*, 2022 WL 4663361; *Massie v. Gen. Motors Co.*, No. 1:20-cv-1560-JLT, 2021 WL 2142728 (E.D. Cal. May 26, 2021); *Mikulsky v. Noom, Inc.*, No. 3:23-cv-285-H-MSB, 2023 WL 4567096 (S.D. Cal. July 17, 2023); *Schnur v. Papa John's Int'l*, No. 2:22-cv-1620-NL, 2023 WL 5529775 (W.D. Pa. Aug. 28, 2023); *Mikulsky v. Bloomingdale's, LLC*, No. 23-cv-425-L-WVG, 2023 WL 6538380 (S.D. Cal. Oct. 6, 2023). Plaintiffs do not cite any cases to the contrary or explain why the reasoning in these cases—some of which Papa John's specifically mentions in its Memorandum in Support of its Motion to Dismiss, *see* doc. 21-1 at 12–14—is incorrect or does not apply to this case.  *See generally* doc. 26.

In sum, Plaintiffs fail to show that the harm they allegedly suffered "arises out of" or "relates to" activities that Papa John's "has purposefully directed . . . at [Missouri] residents." *Lakin*, 348 F.3d at 707 (quoting *Burger King*, 471 U.S. at 472).  Rather, the alleged harm would have occurred no matter the state Plaintiffs were in.  Plaintiffs also fail to satisfy the relevant "additional factor" under *Calder* because they fail to establish that Papa John's use of session replay code on its website and app "[was] uniquely or expressly aimed at the forum state." *See Kendall Hunt Publ'g Co.*, 74 F.4th at 931 (quoting *Bros. & Sisters in Christ*, 42 F.4th at 954). And their reliance on *Zippo* lacks merit in light of recent Supreme Court cases such as *Walden* and *Bristol-Myers Squibb*.  For all of these reasons, the Court finds that it lacks specific jurisdiction over Papa John's.

**IV.      Conclusion**

Because the Court concludes that it lacks personal jurisdiction over Papa John's, the

Court grants Papa John's' [21] Motion to Dismiss and dismisses Plaintiffs' claims without

prejudice.  A separate Order of Dismissal accompanies this Memorandum and Order.

So ordered this 31st day of October 2023.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

13